Gregory VAN RICHARDSON, Plaintiff,

v.

Richard W. BURROWS, et al., Defendants.

No. 3:93CV7602.

United States District Court, N.D. Ohio, Western Division.

Jan. 23, 1995.

Edward G. Kramer, Timothy Robert Obringer, Kramer & Tobocman, Cleveland, OH, for plaintiff.

Nick Tomino, Reminger & Reminger, Cleveland, OH, Terry R. Griffith, Office of Pros. Atty., Sandusky, OH, for defendants Richard W. Burrows, Individually and as Chief of Perkins Tp. Police Dept., Perkins Tp., Marie Hildebrandt, James Dee and Don-

*MEMORANDUM AND ORDER*

JOHN W. POTTER, Senior District Judge:

This matter is before the Court on defendants' motion for summary judgment on plaintiff's federal claims, plaintiff's opposition, and defendants' reply.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 [251–52], 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 [587], 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

*Ralph Shrader, Inc. v. Diamond International Corp.,* 833 F.2d 1210, 1213 (6th Cir. 1987).

*Matsushita* demands only that the non-moving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated in that decision. If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted.

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 468–69, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (footnote omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. *Id.* A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." ... Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Plaintiff was formerly employed as a police officer by the Perkins Township Police Department. Plaintiff was hired as a part-time police officer in January, 1987, and became a full-time officer in January, 1988. Plaintiff remained a full-time officer until his employment was terminated on April 26, 1994.

Plaintiff's amended complaint asserts claims against Richard W. Burrows, Perkins Township, and the individual trustees of Perkins Township. Plaintiff alleges that he suf-

fered adverse employment actions, in violation of 42 U.S.C. § 1983 in retaliation for exercising his First Amendment rights. Plaintiff also contends that defendants took adverse employment action against him in retaliation for his engaging in protected activity under Title VII. Additionally, plaintiff alleges that a termination order issued by the Board or Trustees violated his procedural due process rights. Lastly, plaintiff alleges several state claims not the subject of this motion.

In May, 1991, Chief Richard Burrows assigned plaintiff to the position of Officer in Charge of the night shift. In May, 1992, the Chief charged plaintiff with neglect of duty, sleeping on duty, failing to supervise, misconduct in office, absence from duty and falsifying his tour sheet. Burrows advised the Board of Trustees of these infractions. In June, 1992, the Board of Trustees determined that plaintiff should be suspended thirty days for improper conduct. This suspension was subsequently arbitrated. Arbitrator Calvin Sharpe found that the suspension was excessive and should be reduced to a written reprimand.

On June 19, 1992 the Chief informed plaintiff that, while on suspension, he would not be allowed to work his outside money courier jobs for Service Merchandise or Taco Bell. Also during his suspension, plaintiff submitted an affidavit to the Ohio Civil Rights Commission in support of a sex discrimination claim brought by another officer, Shelly Kreuter, against the police department. On August 20, 1992, plaintiff filed a charge with the Ohio Civil Rights Commission, alleging he was retaliated against for providing testimony in support of Kreuter.

After returning from his suspension in July, 1992, the Chief issued an order which returned plaintiff to the afternoon shift. This order also placed junior officers in command of plaintiff.

On August 18, 1992, plaintiff gave testimony to a grand jury. During the proceeding, plaintiff testified in support of Kenneth Dietrich and Brian T. Dietrich. The Dietrichs had apparently been charged with carrying concealed weapons. The grand jury did not indict the Dietrichs.[1]

Two days after plaintiff testified to the grand jury, the Chief ordered an investigation of plaintiff. The investigation focused on an incident that occurred more than a year earlier in which a complaint alleging use of excessive force had been filed against plaintiff. In December 1992, the Chief ordered plaintiff to work as a dispatcher. It is alleged that, on January 14, 1993, the Chief approached plaintiff and questioned why plaintiff had testified to the grand jury. The Chief also allegedly told plaintiff that he would remain a dispatcher until plaintiff joined the Chief's side in the dispute. It is also alleged that plaintiff also was denied the opportunity for overtime work in February, 1993.

In January, 1993, the Chief also charged plaintiff with violating several department rules. These infractions included misuse of computer facilities, conduct unbecoming an officer against a civilian, and destruction of departmental records. The Chief notified the Perkins Township Board of Trustees of plaintiff's infractions so disciplinary procedures could be initiated. Plaintiff was notified of the charges and informed that a pre-disciplinary hearing would take place February 5, 1993. On March 3, 1993, the Board of Trustees determined that plaintiff had committed the infractions and informed plaintiff that he was terminated from his position.

In June, 1993, subsequent to plaintiff's first termination, the Chief received a report that plaintiff had allegedly solicited a bribe in 1988. The Chief received a written statement from whom the bribe had allegedly been solicited and forwarded it to the Erie County Prosecutor. Plaintiff was indicted on the bribery charge; however, on February 5, 1994, a jury returned a verdict of not guilty.

On October 26, 1993, plaintiff initiated the present lawsuit. On November 13, 1993, plaintiff's termination was modified to a suspension. The arbitrator determined the termination to be excessive and ordered that plaintiff be reinstated with full back pay and

---

1. Ken Dietrich was a former police chief who in 1992 owned an armed courier service. In 1992, police officers in the Perkins Police Department also made courier runs for local businesses.

all benefits, less one week. Plaintiff was to return to work on April 11, 1994.

On plaintiff's return to work, he was questioned about evidence and police evidence tags that were found in his locker following his termination in March, 1993. Plaintiff claims the investigation was in violation of the union contract. As a result of this investigation, on April 21, 1994 the Board of Trustees charged plaintiff with misfeasance, malfeasance, nonfeasance, misconduct in office, neglect of duty, incompetence and/or failure to obey orders given by the proper authority. On April 26, 1994, a hearing was held before the Board of Trustees regarding the charges. Following the hearing, the Board voted to terminate plaintiff from his position.

■ Plaintiff brings one of his claims under 42 U.S.C. § 1983, contending that defendants took adverse employment actions against him in retaliation of his exercising his rights of free speech. Specifically, plaintiff claims defendants punished him for giving unfavorable grand jury testimony. The Sixth Circuit has established a test to determine whether the government action violates the First Amendment. To make out a *prima facie* claim, a plaintiff alleging retaliatory penalization against an employer based on the exercise of First Amendment rights must establish:

1) the speech is related to a matter of public concern;

2) the plaintiff's interest in making the statement outweighs her employer's interest in promoting efficiency in its operations; and

3) the protected speech was a "substantial" or "motivating" factor in the decision to penalize the plaintiff.

*Boger v. Wayne County,* 950 F.2d 316, 322 (6th Cir.1991). If the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to demonstrate that there were other reasons for its adverse action and that it would have taken the same action even if the employee had not spoken." *Id., citing Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Defendants do not contest that plaintiff fulfills the first two requirements of the test. Defendants do contend that plaintiff fails to demonstrate that his constitutionally protected activities were a substantial or motivating factor in defendants' adverse actions.

There is, however, evidence suggesting that the Chief's adverse actions against plaintiff were in retaliation for plaintiff's testimony to the grand jury. Plaintiff's grand jury testimony supported Kenneth Dietrich, owner of an armed courier service. The Chief operated a competing armed courier service. Plaintiff claims that the Chief stated he knew of plaintiff's grand jury testimony and that plaintiff would continue acting as a dispatcher until he went to the Chief's side. Additionally, the Chief previously asked plaintiff to fabricate a report indicating that he was aware Dietrich was carrying a gun. Furthermore, the timing of the adverse action could lead to an inference that it was in retaliation for plaintiff's testimony to the grand jury. Two days after plaintiff testified in the grand jury proceeding, the Chief ordered plaintiff to be investigated.

■ The Chief also contends that, even assuming plaintiff establishes a *prima facie* case, the Chief had legitimate reasons for taking the adverse actions and that plaintiff would have been disciplined regardless of his participation in protected activity. The Chief has provided legitimate reasons for some of the adverse actions; however, many of the adverse actions remain unexplained. Some of the unexplained adverse actions are decreased opportunity to receive overtime pay, plaintiff's demotion to position of dispatcher, and the order which placed junior officers in command of plaintiff. Furthermore, the Chief's comment regarding plaintiff's testimony to the grand jury provides evidence that the adverse actions were a result of a retaliatory motive. Based on this evidence, a reasonable jury could conclude that the adverse actions taken by the Chief were part of a pattern which was intended to retaliate against plaintiff as a result of plaintiff's exercise of his First Amendment rights. Defendants' motion for summary judgment on this issue will, therefore, be denied.

■ Although plaintiff establishes a *prima facie* case against the Chief, plaintiff provides no evidence indicating that the Board of Trustees retaliated against plaintiff for engaging in protected speech. There is no evidence that the Board knew the contents of plaintiff's grand jury testimony or that the Board even knew plaintiff was testifying before the grand jury. Furthermore, the Board did not initiate the proceeding against plaintiff, but instead responded to the charges brought by the Chief. Therefore, as to the defendants on the Board of Trustees, summary judgment will be granted. As to defendant Chief Burrows, however, summary judgment will be denied.

■ Plaintiff also contends that his right to association under the First Amendment was violated. Plaintiff provides no evidence that any adverse actions performed by defendants were in retaliation for his association with Dietrich or Shelly Kreuter. In fact, plaintiff provides no evidence that defendants were aware that plaintiff had an association with Dietrich or Kreuter that involved a public concern. The evidence that plaintiff filed an affidavit in support of Kreuter's claim is not sufficient to create an associational interest. Similarly, evidence that the plaintiff's testimony to the grand jury supported Dietrich's position is not sufficient to create an associational interest. Because plaintiff fails to establish a *prima facie* case that defendants violated his First Amendment right to association, defendants' motion for summary judgment will be granted. *See, e.g., Brown v. Alexander*, 718 F.2d 1417 (6th Cir.1983); *Columbus Education Ass'n v. Columbus City School District*, 623 F.2d 1155 (6th Cir.1980).

■ Plaintiff also claims defendants, in violation of Title VII, took adverse employment action against him in retaliation for providing an affidavit in support of Kreuter's charge of sex discrimination against Perkins Township. To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that: (1) he was engaged in an activity protected by Title VII; (2) his exercise of protected activity was known to defendants; (3) defendants subsequently took an employment action adverse to him; and (4) a causal connection existed between the protected ac-

tivity and the action. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir.) *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990). To establish a causal connection plaintiff must adduce evidence "sufficient to raise the inference that his protected activity was the likely reason for the adverse action." *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990) (*quoting Cohen v. Fred Meyer, Inc*, 686 F.2d 793, 796 (9th Cir.1982)). A causal connection may be demonstrated by the proximity between the adverse action and the protected activity. *Wrenn v. Gould*, 808 F.2d 493 (6th Cir.1987).

■ Plaintiff has established a *prima facie* case of retaliation under Title VII. Plaintiff engaged in protected activity when he filed an affidavit in support of Kreuter's EEOC claim. Defendants were aware of the protected activity. Subsequent to the protected activity, defendants took action adverse to plaintiff. The temporal proximity between the filing of the affidavit and the adverse action provides evidence that there is a causal connection between the protected activity and adverse action. The increase in the amount of disciplinary action following the protected activity also supports an inference of retaliation. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986).

■ Because plaintiff has established a *prima facie* case, the burden of going forward shifts to defendants, who must "articulate some legitimate, nondiscriminatory reason" for the decision to discipline plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Again, defendants present legitimate, nondiscriminatory reasons for a portion of the adverse actions alleged by plaintiff. Defendants, however, do not provide reasons for other adverse actions. These unexplained adverse actions could create the inference that the Chief engaged in a pattern of retaliatory actions against plaintiff. As a result, a reasonable jury could infer not only that the unexplained adverse actions were retaliatory, but that the legitimate reasons put forth by the Chief were pretextual.

■ Again, plaintiff provides no evidence suggesting the Board of Trustees retaliated against plaintiff for engaging in activity protected under Title VII. Many of the adverse actions alleged by plaintiff did not involve the Board. Plaintiff has failed to establish a causal connection between his protected activity and any adverse actions taken by the Board; therefore, the Board of Trustees will be granted summary judgment as to plaintiff's Title VII retaliation claim.

Lastly, plaintiff alleges that his discharge violated his right to due process because state statutory procedures were not followed. Defendants contend that allegations of federal due process violations are judged by federal standards, not state law. Furthermore, defendants assert that plaintiff's discharge did not violate due process under federal standards.

The Supreme Court in *Loudermill v. Cleveland Bd. of Educ.*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), established the minimal protections afforded to a public employee in a pretermination proceeding. The Court held the essential requirements of due process, "are notice and opportunity to respond." *Id.* at 546, 105 S.Ct. at 1495.

Relying on *Loudermill*, the Sixth Circuit determined in *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.1990), "the due process clause requires that, prior to termination, a public employee, with a property interest in his or her public employment, be given oral or written notice of the charge against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer."

■ On February 2, 1993 plaintiff received written notice of the charges filed against him and was informed that a pre-disciplinary conference would be held February 5, 1993. The conference was held, and plaintiff was provided the opportunity to respond to the charges. Plaintiff does not dispute these facts, but contends his due process was violated because state law procedures were not followed. Due process requirements, however, are determined by federal standards, not state procedures.

When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress for procedural due process violations.

*Goodrich v. Newport News School Bd.*, 743 F.2d 225, 227 (4th Cir.1984). Similarly, in *Buckner*, the Sixth Circuit held that when established procedures were not followed, analysis should be performed under the guidelines established in *Loudermill*. *Buckner*, 901 F.2d at 495. Because defendants afforded plaintiff the minimal due process to which he was entitled under *Loudermill*, defendants' motion for summary judgment shall be granted at plaintiff's due process claims.

■ Finally, the Court notes that, while not specifically addressed by either party in the briefs, there is no evidence in the record which would support a § 1983 cause of action against defendant Perkins Township. A township, as a municipality, can only be liable under § 1983 if the alleged constitutional deprivations were proximately caused by the policies, practices or procedure of the township. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). As there is no evidence in the record which would support a § 1983 claim against defendant Perkins Township, the Court will grant summary judgment in favor of Perkins Township on all of plaintiff's claims.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim and Title VII retaliation claim be, and hereby is, GRANTED as to defendant Trustees and DENIED as to defendant Burrows, and it is

FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's First Amendment association claim be, and hereby is, GRANTED; and it is

FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's

due process claim be, and hereby is, GRANTED.