## AWADA

v.

## UNIVERSITY OF CINCINNATI.

Court of Claims of Ohio.

No. 95–11234.

Decided Feb. 5, 1997.

102

*Randolph H. Freking* and *Peter A. Burr,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Susan C. Walker,* Assistant Attorney General, for defendant.

---

FRED J. SHOEMAKER, Judge.

Plaintiff, Moustafa Awada, Ph.D., filed this claim against defendant, University of Cincinnati ("UC"), alleging promissory estoppel, breach of contract, and *quantum meruit.* Defendant denied liability to plaintiff.

On November 4, 1996, this action came before the court for trial on the sole issue of liability. The findings and conclusions herein are based on the documents, pleadings, and the testimony presented at trial.

The court finds that the following facts were proven by a preponderance of the evidence. In 1991, plaintiff was employed at the University of Florida under a postdoctorate contract ending at the completion of the 1991–1992 academic year.

His postdoctorate studies at the university focused on the area of particle theory physics. The particle theory physics group at the University of Florida was highly regarded.

In the spring of 1991, Professor Fred Mansouri, from the University of Cincinnati, offered plaintiff a postdoctoral position within the particle theory physics group. Plaintiff declined the offer. He had already participated in postdoctorate studies. Plaintiff was only interested in obtaining a faculty position, which was very difficult to obtain because of the wealth of applicants.

In a later conversation, Professor Mansouri notified plaintiff that the physics department was expecting Professor Witten to retire, effective in 1992. Professor Mansouri indicated that once that position opened, he and the other members of the particle physics group would recommend plaintiff for the vacancy, provided that plaintiff would come to UC as a postdoctorate fellow in September 1991.

In April 1991, plaintiff visited UC and delivered a colloquium on W–gravity and viewed the facilities. At the time of this visit, Professors Mansouri and Suranyi again restated the particle theory group's intention to recommend plaintiff for Professor Witten's position provided he came to UC as a postdoctorate research assistant in September 1991. They told him that it would be to his advantage if he wished to secure the necessary faculty and administrative approval.

In response to Professors Mansouri's and Suranyi's statements, plaintiff accepted the position as a postdoctorate research assistant at UC beginning in September 1991. Shortly after plaintiff arrived at UC, Professor Witten retired. However, plaintiff was informed that the faculty position would not be available as planned, since a hiring freeze was imposed by the university due to financial constraints. Neither party was aware of the hiring freeze prior to plaintiff's accepting the postdoctorate position at UC. Due to the hiring freeze, Professor Mansouri suggested to plaintiff that he should seek a position at another educational facility. Plaintiff acted upon this advice by sending his curriculum vitae, accompanied by Professor Mansouri's letter of recommendation, to several colleges and universities. After these efforts failed, plaintiff remained at UC to finish his postdoctorate research.

In the fall of 1993, a tenured-track faculty position opened in the physics department. The position was designated to the particle physics group, specializing in phenomenology. The new position was not created as a result of Professor Witten's retirement. In fact, the position was quite different from Witten's position, since it strictly focused on phenomenology. A search committee, consisting of five faculty members, was formed to aid in the recruitment for the position. Drs. Mansouri, Suranyi and Wijewardhana were three of the five search committee members. Plaintiff applied for the position; however, due to his lack of expertise in phenomenology, the search committee recommended

Professor Kagan. Professor Suranyi testified that Professor Kagan was more qualified for the faculty position than plaintiff. Professor Kagan received the faculty position after being approved by the entire faculty.

Plaintiff alleges a three-part cause of action against defendant. First, plaintiff asserts that promissory estoppel applies, since he had relied to his detriment on defendant's promise. Second, plaintiff contends that the failure of the search committee to recommend him for the faculty position constitutes a breach of contract. Third, plaintiff alleges that *quantum meruit* affords him reimbursement for the services he provided beyond his postdoctorate duties.

Defendant asserts that promissory estoppel cannot be invoked against the state based upon unauthorized acts or declarations. The court finds this argument to be without merit. This court allows promissory estoppel claims to be argued alternatively to breach of contract claims. *Lippert v. Univ. of Cincinnati* (Oct. 3, 1996), Franklin App. No. 96API03–349, unreported, 1996 WL 566012; *Schleicher v. Alliance Corporate Resources, Inc.* (Dec. 7, 1995), Franklin App. No. 95APE03–311, unreported, 1995 WL 723555. Specifically, this court has applied promissory estoppel against a state agency in the case of *Helmkamp v. Ohio Bur. of Workers' Comp.* (Apr. 19, 1996), Ct. of Cl. No. 94–01278, unreported. Therefore, the state is not immune from claims involving promissory estoppel under certain circumstances.

The test set forth for promissory estoppel is whether the employer should have reasonably expected its representation to be relied upon by the promisee and, if so, whether the expected action or forbearance actually resulted in and was detrimental to the promisee. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150. This test involves four prongs. First, there must be a promise to the promisee. Second, the promisee must have relied on the promise. Third, the reliance must be justifiable. Fourth, the reliance must cause a detriment to the promisee. The court finds by a preponderance of the evidence that there was a promise, reliance, and a detriment. Therefore, the court shall address only whether the reliance was justifiable.

For promissory estoppel to apply, reliance by the promisee must be reasonable and foreseeable. *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036. The court finds that plaintiff's reliance was not justified for three reasons.

First, a reasonable person should have known that the professors in the particle theory group did not have the authority to promise a recommendation for a faculty position without considering other applicants. Plaintiff testified that he was completing his third postdoctorate study when he received the promise from the particle theory group. A person with plaintiff's amount of postdoctorate

experience should have knowledge regarding the hiring practices of universities and colleges for faculty positions. Due to this acquired knowledge, a reasonable person, comparable to that of plaintiff, should have known that the particle theory group did not have authority to promise a recommendation for a faculty position.

Second, the court finds that a reasonable person would not have relied on a promise that the promisor refused to place in writing. Plaintiff testified that he had requested that the promise of a recommendation be made in writing. Additional testimony by plaintiff revealed that the particle theory group refused to place the promise in writing. This testimony was confirmed by Professor Mansouri. The court finds that, upon a refusal by a promisor to place a promise in writing, a reasonable person should have been put on notice that such a promise was not reliable. Therefore, reliance by plaintiff on such a promise would not be justified.

Finally, the court finds that a reasonable person would not rely on a promise where it is based on an uncertain contingency. Plaintiff was promised a recommendation for Professor Witten's faculty position when it became available. It is clear that the promise was contingent upon the availability of Professor Witten's faculty position. Despite assurances by the particle theory group, the promise could not have been considered a certainty. A reasonable person would have known that there was a chance of the promise not being fulfilled. Therefore, the court finds that a reasonable person would not have relied on the promise, since it was based upon an uncertain contingency.

Based upon the aforementioned reasons, the court finds that promissory estoppel is inapplicable to plaintiff's claim. *Healey, supra.*

■ Even if plaintiff's reliance were justified, the promise still could not be enforced. The particle theory group specifically promised plaintiff a recommendation only for Professor Witten's position. However, due to the unexpected hiring freeze, this position never became available. The position that eventually became available did not result from Professor Witten's retirement, nor was it within plaintiff's field or expertise. The court finds that the new position was much different from that for which plaintiff was recommended. Moreover, the promised recommendation was valid only for Professor Witten's position, which terminated with the hiring freeze. Therefore, the promise became null and void upon the termination of Professor Witten's position.

■ Additionally, the court finds that there was no breach of contract. The elements of a breach of contract "include the existence of a contract, performance by the plaintiff, breach by the defendant, and damages or loss to the plaintiff." *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44. There is no evidence to support a finding of a contract, expressed or implied. Plaintiff failed

to prove by a preponderance of the evidence that a contract was in existence. Therefore, the court finds that breach of contract, as a cause of action, is inapplicable, since a contract did not exist.

The court also finds plaintiff's claim for *quantum meruit* to be without merit. Plaintiff testified that he performed duties not required by his postdoctorate position. Specifically, plaintiff testified that he had taught classes for Professor Mansouri. However, there was also testimony that plaintiff performed this task on his own free will. There was no evidence indicating that this task was required of plaintiff. Therefore, since plaintiff performed faculty tasks voluntarily, the court finds that *quantum meruit* does not apply.

The court concludes that plaintiff has failed to prove promissory estoppel, breach of contract, and *quantum meruit* by a preponderance of the evidence. Accordingly, judgment is rendered for defendant and against plaintiff in this matter.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.